# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DENNIS LEE HOHOL,**

      Plaintiff,

      v.                      Case No. 08-C-832

**MICHAEL THURMER, JON WALTZ, AND
NEVEN WEBSTER**

      Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Dennis Lee Hohol, filed an amended pro se civil rights complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) on March 17, 2009. (Docket No. 10.) In an order dated May 14, 2010, Chief United States District Judge Charles N. Clevert screened the plaintiff's complaint in accordance with 28 U.S.C. § 1915(a) and allowed him to proceed on his claims against Defendant Michael Thurmer, Jon Waltz, and Neven Webster. (Docket No. 14.) On July 8, 2010, the matter was reassigned to this court upon the consent of the parties to the exercise of jurisdiction by the magistrate judge. (Docket No. 27.) The defendants then filed a motion for summary judgment based on Plaintiff's alleged failure to exhaust administrative remedies. (Docket No. 29.) That motion is now ready for resolution.

      **I.**      **SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is proper, under Fed.R.Civ.P. 56(c)(2), when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that

the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. The existence of a factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those that might affect the outcome or resolution of issues before the court. See Anderson, 477 U.S. 242. A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. Id. at 248; Santiago v. Lane, 894 F.2d 218, 221 (7th Cir. 1990).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c); Celotex, 477 U.S. at 323. The moving party satisfies its burden by showing that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. Id. at 324. When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."). If a plaintiff merely repeats under oath the same general allegations contained in the complaint, this is not enough to convert claims into evidence sufficient to maintain a claim at the summary judgment stage. Wudkte v. Davel, 128 F.3d 1057 (7th Cir. 1997).

## II. BACKGROUND

The plaintiff is a pro se prisoner who was disabled when he entered the Wisconsin prison system. He also suffered an injury in December 2007 while he was working in the kitchen at Dodge Correctional Institution ("Dodge"). Even with his disability, the plaintiff had been working at Dodge since April 2003. On September 19, 2008, the plaintiff was transferred to Waupun Correctional Institution ("WCI"). This transfer resulted from a blanket request by defendant Jon Waltz that all disabled persons be transferred from Dodge because Dodge had no jobs available for prisoners with disabilities. According to the plaintiff, the Program Review Committee at Dodge justified the transfers by finding that Dodge did not have any jobs available that fit disabled inmates' activity level. (Docket No. 14, Order pp. 3-4.) They determined that the transfers were warranted so that other inmates could have the opportunity to utilize the jobs at Dodge. (Id.)

The plaintiff avers that his transfer from Dodge to Waupun was part of a continuing retaliation against him by defendant Michael Thurmer because of lawsuits the plaintiff had filed against employees of the Wisconsin Department of Corrections ("DOC"). (Id.) The plaintiff further avers that defendant Neven Webster restricted his law library use at WCI, also in retaliation for the lawsuits the plaintiff had filed. (Id.) On March 17, 2009, the plaintiff filed an amended pro se complaint pursuant to 42 U.S.C. 1983. (Docket No. 10.) In an order dated May 14, 2010, Chief United States District Judge Charles N. Clevert screened the plaintiff's complaint and allowed him to proceed on the proposed retaliation claims against defendants Thurmer and Webster as well as the ADA and Rehabilitation Act claims against defendant Waltz. (Docket No. 14.)

## III. FACTS

In October 2008, plaintiff submitted two Offender Complaints with the Inmate Complaint Examiner ("ICE") regarding the underlying claims in this case, but these complaints were returned and never accepted by the ICE. (Docket No. 44, ¶ 9.) Plaintiff filed the first complaint regarding

3

his transfer to WCI and the loss of his job on October 23, 2008. (Docket No. 32-2, Ex. B pp.1.) That complaint reads as follows:

> On 9-12-2008 I filled out the appeal of program review decision to Madison, WI, Re: Statement of light duty—I am disabled and because of this disability I was told that I am a security risk at DCI. I was then transferred to WCI after I have/had been working for (5) years (10) months this was violating my constitutional rights. It is now 10-22-2008 and I have not received a reply on my appeal. I demand a reason or an answer to that appeal DCI took my job away, so I can't earn money like any other inmate.

(Id.)

On October 24, 2008, the Department of Corrections responded to plaintiff with a document titled "Return of Complaint Materials." (Docket No. 32-2, Ex. B pp.2.) This document informed plaintiff that the "complaint materials received on October 23, 2008 are being returned because: [c]omplaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)]. Before this complaint is accepted, you need to attempt to resolve the issue by contacting Carl Koenig, PRC Coordinator [DOC 310.09(4)]." (Id.) The DOC's response contained additional instructions to the plaintiff:

> Please inform Mr. Koenig that you were instructed to contact him by the Inmate Complaints Department regarding your PRC issues. If you feel that this staff member does not address the issue to your satisfaction, you may resubmit the complaint. Please wait a reasonable amount of time for a reply before you resubmit your complaint.

(Id.)

On October 27, 2008, plaintiff filed the second Offender Complaint, (Docket No 32., Ex. C pp. 1), largely reiterating the issues included in the first complaint but with an additional statement directed to Mr. Koenig, that plaintiff had been referred to him by Ms. Kroll (who had sent the first DOC response of October 24, 2008). On October 30, 2008, the DOC responded with another "Return of Complaint Materials" informing plaintiff that his "complaint materials received on October 27, 2008 are being returned because: [c]omplaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)]." (Docket No. 32, Ex. C pp. 2.) That document further instructed plaintiff that:

4

The Inmate Complaints Department is unable to discern one clear specific issue and/or occurrence in your complaint. If you choose to resubmit your complaint, include a clear and concise explanation of one issue only and let us know that it is a resubmission. Please include pertinent information such as date, time, place, people, etc. Did you write to Mr. Koenig as previously instructed?

(Id). Plaintiff did not redraft nor resubmit any complaints for submission to the ICE following the DOC's second response of October 30, 20008. (Docket No. 32, ¶ 9.)

**IV. ANALYSIS**

Defendants claim that plaintiff did not properly file an Offender Complaint regarding any of his claims in this case. (Docket No. 31, ¶ 9.) They assert that the ICE's return and failure to process those complaints establish plaintiff's failure to exhaust administrative remedies as required under the Prison Litigation Reform Act. (Docket Nos. 29, 30.) Therefore, defendants argue, this court should grant the motion for summary judgment. (Id.) Plaintiff concedes that his two complaints were returned and never accepted by the ICE, however he claims that the ICE's return and failure to accept those complaints has "eliminated the plaintiff from correcting an error and thus granted the plaintiff that he has exhausted his remedy." (Docket No. 40, ¶ 9.) This court disagrees.

**a. Exhaustion**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "no action shall be brought with respect to prison conditions under § 1983 or any other federal law by a prisoner confined in any prison until such administrative remedies as are available are exhausted." The PLRA's exhaustion requirement is mandatory and applies to all prisoners seeking redress for wrongs in the prison. Porter v. Nussle, 534 U.S. 516, 532 (2002). The court must address the exhaustion issue immediately and resolve disputes about its application before turning to other issues in the suit. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 536 (7th Cir. 1999). The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam).

This circuit has taken a strict compliance approach to exhaustion. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must properly use the prison's grievance process. Id. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. Id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. Pozo, 286 F.3d at 1025; Woodford v. Ngo, 548 U.S. 81, 90-91("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

The failure to properly complete each step in the grievance procedure constitutes failure to exhaust available administrative remedies. Woodford, 548 U.S. 81. Finally, a prisoner must use the grievance procedure even if he believes doing so will be futile. Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001)("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); see also Massey v. Wheeler, 221 F.3d 1030, 1034 ("there is no 'futility exception' to the PLRA exhaustion requirement.")

**b. Wisconsin Inmate Complaint Review System**

In order to exhaust available administrative remedies, Wisconsin requires inmates to file offender complaints through the Inmate Complaint Review System (ICRS), outlined in Wis. Admin. Code DOC 310. See §§ DOC 310.05, 310.08. An inmate may use the ICRS to raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights. § 310.08(1). The inmate must first file an Offender Complaint with the Inmate Complaint Examiner (ICE) within 14 calendar days after the occurrence giving rise to the complaint. §§ DOC 310.09, 310.11(5)(d). DOC 310.09 sets out the procedure by which a complaint can be filed. That section states that the Offender Complaint must "contain only one issue per complaint, and shall

clearly identify the issue." § DOC 310.09(1)(e). In addition, § DOC 310.09(3) states that an inmate grievance shall be returned, and not processed, when it fails to meet any of the requirements listed under § DOC 310.09(1). The ICE makes a recommendation on the Offender Complaint to the appropriate institution level reviewing authority. § DOC 310.11(1)-(4). The Offender Complaint is then decided by the appropriate reviewing whose decision can be appealed to the Corrections Complaint Examiner. §§ DOC 310.12, 310.13. An inmate dissatisfied with a reviewing authority decision may, within 10 calendar days after the date of the decision, appeal that decision by filing a written request for review with the corrections complaint examiner. § DOC 310.13(1).

If prison officials reject a grievance for failing to comply with a procedural requirement and they decline to address the merits of the grievance, the general rule is that the prisoner has not exhausted his administrative remedies. Dixon v. Page, 291 F.3d 485 (7th Cir. 2002); Lewis v. Washington, 300 F.3d 829 (7th Cir. 2002). The general rule granting agencies deference in interpreting their own regulations is particularly strong in light of the Supreme Court's interpretation of the PLRA. Woodford, 548 U.S. at 94 ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons . . . ."). Thus, courts must give prison administrators some leeway in applying their own grievance procedures. Simpson v. Greenwood, No. 06-C-212-C, 2007 U.S. Dist. LEXIS 26214 *10 (W.D. Wisc. Apr. 6, 2007).

c. **Plaintiff's Offender Complaints**

In this case, the question posed is whether the plaintiff has exhausted all administrative remedies under section 1997(e) of the PLRA. The answer to this question can be found by resolving the following underlying questions: first, did plaintiff properly follow the system's procedures for filing a complaint; and second, did plaintiff's complaint contain more than one issue? Plaintiff filed his initial Offender Complaint on October 23, 2008. That complaint was promptly returned to him under the authority of DOC 310.09(1)(e) for failure to identify one issue clearly. Pursuant to their

7

authority, the ICE also informed plaintiff that he was required to attempt to resolve the issue by contacting a member of the prison staff. Plaintiff was specifically instructed to contact Mr. Koenig in order to give prison officials a chance to remedy his complaint before taking further action or initiating a lawsuit such as this. See Fortney v. Stevens, 09-CV-192-SLC, 2009 U.S. Dist. LEXIS 105820 *6 (WD Wisc. Nov. 10, 2009)("The whole point of the exhaustion requirement is to allow prison officials the first opportunity to remedy a prisoner's complaint that his rights were violated."). Unfortunately, plaintiff did not contact Mr. Koenig directly as he was clearly instructed. Instead plaintiff chose to file a second Offender Complaint which was basically a resubmission of the complaint that had previously been rejected as containing multiple issues. In that second complaint he also attempted to indirectly contact Mr. Koenig in a postscript. This, however, was contrary to the instructions given to the plaintiff.

All of this amounts to plaintiff's failure to comply with the critical procedural requirements of the administrative system governing his detention. It is well established that the prison grievance process itself defines the applicable procedural rules that a prisoner must exhaust. See Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002).

> *Section 1997e(a)* does not delineate the procedures prisoners must follow. We have held that the rules come from the prison grievance systems themselves—state law for state prisons, federal administrative law for federal prisons. We wrote in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), that "prisoners must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Now we add the logical extension that the *grievances must contain the sort of information that the administrative system requires*.

(Id.) (emphasis added). Therefore, it appears that the plaintiff failed to comply with the procedural requirements and, if so, also failed to exhaust his administrative remedies as required under § 1997e(a). See Woodford, 548 U.S. at 90-91.

The court uses the word "appears" because the department's regulations do not clearly define what is meant by the term "issue" in § DOC 310.09(1)(e). As can be seen from the prior

discussion, the complaints submitted by the plaintiff only fail to conform to the procedural rules if they contain multiple issues. The court now addresses the second question in the failure to exhaust analysis of whether, under the regulations, plaintiff's complaint contains multiple issues.

The general rule is that is that agencies are granted deference in interpreting their own regulations. Old Ben Coal Co. v. Director, Office of Workers' Comp. Programs, 292 F.3d 533, 542 n. 8 (7th Cir. 2002)("an agency's considered interpretation of its own regulations is entitled to deference when the language of the regulation is ambiguous." (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)). Again, that proposition is particularly strong in light of the Prison Litigation Reform Act. See Woodford, 548 U.S. at 94. This does not mean that the prison grievance system is beyond review. However,"[w]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." Pfeiffer v. Board of Regents, 110 Wis 2d. 146, 154-55, 328 N.W.2d 279, 282-83 (1983). The interpretation by an administrative agency of its own regulation is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous. Id. (citing Beal v. First Federal Savings & Loan Asso. Of Madison, 90 Wis 2d 171, 183, 279 N.W. 2d693 (1979); see also State ex rel. Sprewell v. McCaughtry, 226 Wis 2d. 389, 394, 595 N.W.2d 39, 41 (1999 Wis. Ct. App.)(noting deference required in administrative agency interpretations in the prison setting).

In the instant case, the ICE found that plaintiff's Offender Complaints contained multiple issues. As a result, the ICE rejected and returned both complaints to plaintiff because they were deficient under § DOC 310.09(1)(e). This court cannot find that the ICE's interpretation was inconsistent with the language of the regulation or clearly erroneous. After reviewing the Offender Complaints filed by the plaintiff, the ICE could have reasonably concluded that plaintiff was complaining about his transfer from WCI, his failure to receive an answer to the appeal from that transfer, a violation of his constitutional rights, or his inability to work and receive money. The

ICE's interpretation that the Offender Complaint was deficient because it contained multiple issues therefore is not clearly erroneous or arbitrary.

Regardless of the single versus multiple issue question, plaintiff's failure to comply with this requirement could have been excused if the ICE had failed to alert him of the problem and how to fix it. Dole, 438 F.3d at 809-10. However, in this case, the ICE clearly instructed plaintiff that his complaint contained multiple issues and that he needed to contact Mr. Koenig directly before attempting to re-file. Plaintiff ignored this instruction, essentially re-filed the first complaint and once it was rejected, he initiated this lawsuit. That does not constitute proper exhaustion of remedies. As a matter of law, this court finds that plaintiff has failed to exhaust administrative remedies because he did not comply with the procedures laid out by the Wisconsin Inmate Complaint Review System.

Finally, the court notes that there is nothing in the facts to suggest that plaintiff has been denied a "meaningful opportunity" to present a meritorious grievance, as is required under the PLRA. Woodford, 548 U.S. at 102. Plaintiff still has the opportunity to resubmit his grievances to the ICRS, even though they may now be untimely, as the regulations state that the "institution complaint examiner may accept a late complaint for good cause." § DOC 310.09(6).

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 29) is hereby **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of the defendants and dismiss the plaintiff's amended complaint and this action.

Dated at Milwaukee, Wisconsin this 30th day of November, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge